## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 18, 1916.

TOWNSEND SCOTT, ET AL., CO-PARTNERS, TRADING AS TOWN-SEND SCOTT & SON,

VS.

MARYLAND, DELAWARE AND VIRGINIA RAILROAD COMPANY, ET AL.

*Rufus W. Applegarth* for plaintiff.

*Ralph Robinson* and *Bernard Carter & Sons* for defendants.

BOND, J.—

The ground of the decision in this case was that the relief prayed was something outside the functions of the Court and beyond its powers.

The plaintiffs, starting with the fact that the defendant company in which they owned shares of stock was forbidden to continue the Chester River steamboat service, asked that all the property of the company be taken in hand by the Court and operated in its regular service until sale could be effected. The unbroken continuation of the Chester River service, with the same boats, was the main purpose of the suit. And, according to the plan, the Court was merely to act as a substitute holder and operator, untrammeled as it was by the Interstate Commerce Commission's order, until the sale. It was to do nothing more. No equitable relief was prayed for. No winding up of the corporation with a consequent distribution of its assets was suggested. Indeed, the company's railroad and its line of steamboats between Love Point and Baltimore are not affected by any order of the Commission.

And it was of the essence of this plan that the corporation should be given no choice to use its own property hereafter—for the boats remain its own property—in some other proper service. It was not to be free to sell to the highest bidder wherever he might be found. On the contrary, the Court was asked to seize the property, hold it, and ultimately to sell it to some one of the Court's choice, or at least to someone who would be willing and able to run the boats in the same service.

If the Court could do all this a solution of the difficulty confronting the people heretofore served by the Chester River Line would be found. But it would involve an extra-judicial use of the ordinary court machinery which is impossible. The Court has many powers, but it is after all only a court, with powers appropriate only to judicial administration. What is asked for here is rather the unrelated act of an executive with unlimited power.

That damage to the public served must sometimes follow the enforcement of the Panama Canal Act is apparent. It stops a public service by one carrier, and leaves the continuation of it by another to chance. And in this instance the chance seems so far to be a slender one. The situation is extraordinary. Its mere novelty does not of course exclude it from the control of a court of equity; but, so far as I can see, that Court cannot fill the need.

There were other objections to the bill urged by the defendants, but those I have discussed seemed to me the most important.